J-S33014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HENRY DION WILLIAMS :
:
Appellant : No. 1270 WDA 2022

Appeal from the PCRA Order Entered September 29, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001527-2012

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: December 6, 2023**

Appellant, Henry Dion Williams, appeals from the post-conviction court's

September 29, 2022 order denying his timely-filed petition under the Post

Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises two

claims of trial counsel ineffectiveness. After careful review, we affirm.

The PCRA court set forth a detailed summary of the facts and procedural

history of this case, which we adopt herein. *See* PCRA Court Opinion (PCO),

2/1/23, at 1-7. Briefly, Appellant was convicted in 2013 of first-degree

murder, possession of a firearm by a person prohibited, and carrying a firearm

without a license. His convictions were based on evidence – including video

and eyewitness testimony – that he shot and killed Rensfield Jarvis outside a

bar in the City of Washington on May 24, 2012. On November 26, 2013,

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant was sentenced to life imprisonment, without the possibility of parole. He timely appealed and, after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. Williams*, 120 A.3d 394 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1201 (Pa. 2015).

Appellant filed a timely, *pro se* PCRA petition on July 21, 2016. Counsel was appointed but, for reasons not pertinent to the issues he raises on appeal, an amended petition was not filed on Appellant's behalf until December 22, 2021. On July 12, 2022, the PCRA court filed a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. On September 29, 2022, the court issued an order dismissing his petition.

Appellant timely appealed, and he complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on February 1, 2023. Herein, Appellant states two issues for our review:

> 1. Did the [PCRA] court err in dismissing Appellant's PCRA [petition], where trial counsel rendered ineffective assistance by failing to sever Appellant's charge under 18 Pa.C.S. § 6105, thereby allowing the jury to hear evidence of Appellant's prior firearm conviction?
>
> 2. Did the [PCRA] court err in dismissing Appellant's PCRA [petition], where trial counsel rendered ineffective assistance by moving for a judgment of acquittal in the presence of the jury?

Appellant's Brief at 4.

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's

- 2 -

determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 ... (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different." ***Commonwealth v. King***, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, … 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, … 957 A.2d 237, 244 ([Pa.] 2008) (citing ***Strickland***, 466 U.S. at 694…)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

In the instant case, we have carefully considered Appellant's arguments, taking into account the briefs of the parties, the certified record, and the applicable law. We have also assessed the well-reasoned opinion by the Honorable John F. DiSalle of the Court of Common Pleas of Washington County. We conclude that Judge DiSalle's decision clearly and correctly explains why Appellant's arguments are meritless.[1] Accordingly, we adopt

---

[1] We only mention that we do not adopt, or express any opinion on, the court's conclusion that Appellant's first issue lacks arguable merit. In that issue, Appellant alleges that his trial counsel was ineffective for not seeking to sever his charge of persons not to possess a firearm (18 Pa.C.S. § 6105) from his remaining offenses, thereby allowing the jury to hear evidence that Appellant was previously convicted of possession of a weapon on school property (18 Pa.C.S. § 912). In concluding that Appellant's claim lacks arguable merit, the court cites ***Commonwealth v. Brown***, 186 A.3d 985 (Pa. Super. 2018), which Appellant claims the court mistakenly reads as indicating that "if the prior offense the Commonwealth wishes to introduce is not for a violent offense, then it is automatically admissible." Appellant's Brief at 24. We need not delve into a discussion of ***Brown***, or the case on which ***Brown*** relies, ***Commonwealth v. Carroll***, 418 A.2d 702 (Pa. Super. 1980), nor determine whether the PCRA court's reliance on them was correct, as we agree with the PCRA court's alternative conclusion that Appellant has failed to prove that the admission of his prior offense caused him prejudice. ***See*** PCO at 10. As the court observes, "[t]he jury was not informed whether this predicate offense involved a firearm, was not appraised of the grading of the offense, nor any of the underlying facts of the offense." ***Id.*** at 9. Additionally, the court provided a cautionary jury instruction regarding Appellant's prior conviction at

*(Footnote Continued Next Page)*

Judge DiSalle's opinion as our own, and affirm the order dismissing Appellant's petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/6/2023

---

three different points during the trial, including just after that evidence was introduced, **see** N.T., 9/9/13-9/13/13, at 278-79; at the close of the Commonwealth's case in chief, **see id.** at 319-20; and, again, during the closing jury charge, **see id.** at 366. There was also strong evidence supporting Appellant's guilt, as detailed by the PCRA court in its opinion. **See** PCO at 1-6. Given this record, we agree with the court that Appellant has failed to demonstrate a reasonable probability that, had the jury not heard about his prior conviction, the result of the trial would have been different. Thus, trial counsel was not ineffective for failing to move to sever Appellant's charge of persons not to possess a firearm, and we need not address his arguments pertaining to the court's interpretation and/or application of the holdings of **Brown** and **Carroll**. We express no opinion on that portion of the court's decision herein.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
vs. )           No. 1270 WDA 2022
)           CP-63-CR-0001527-2012
)
Henry Dion Williams, )
)
Defendant. )

## Opinion Pursuant to Pa.R.A.P. 1925

This matter involves the amended Post Conviction Relief Act ("PCRA") petition filed on December 21, 2021, on behalf of the Defendant, Henry Dion Williams (hereinafter "defendant"), seeking collateral relief from his judgment of sentence for criminal homicide, murder in the first degree, possession of firearm prohibited and firearm not to be carried without a license, entered at the above-captioned term and number on November 26, 2013. The court dismissed the amended petition by order dated September 29, 2022. A timely appeal ensued and this opinion is written in support of the order dismissing the petition pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## Factual and Procedural History

On or about June 20, 2012, defendant was arrested by the McKeesport Police Department on the arrest warrant of the City of Washington Police for charges, including Criminal Homicide, stemming from an incident on the night of May 23, 2012, through the early morning hours of May 24, 2012.

During the trial, the jury heard evidence that the City of Washington Police Department was called to Pickles bar on Ewing Street, in the City of Washington, early in the morning of May 24, 2012, in response to a 911 call that shots were fired in the vicinity of Pickles Bar. Patrolmen

Peter Jaskiewicz testified that as he responded to the call while in route to Pickles bar, an additional transmission from 911 reported that a man was shot outside of Pickles bar and that the shooter had fled down an alley away from the scene. Officer Jaskiewicz was first to arrive on the scene. He testified he observed the victim, a black male with dreadlocks wearing a white T-shirt and shorts, later identified as Rensfield Jarvis, lying in the street on his back near the entrance of Pickles bar.[1]

Officer Jaskiewicz testified that he observed gunshot wounds to the face and below the sternum of the victim's chest. A faint heart beat was initially detected. However, when EMS arrived on the scene, the victim had expired.[2] Coroner Timothy Warco pronounced the victim dead at the scene.[3] Officer Jaskiewicz and Sergeant Ronald Aiello testified they observed fragmented bullet rounds lying around the victim's body, including a bullet jacket and bullet slug at the scene.[4]

Eyewitness testimony and surveillance video from inside the bar revealed that a man with the white T-shirt, later identified as Mr. Jarvis, had been followed out of the bar by a black male wearing a black shirt, jean shorts, and a red baseball cap. Behind the two men were two women, April Lash and Kayla Cunningham, who exited after them.[5]

Witness Mark Jones testified that at one point that evening the victim extended his hand to the man with the black T-shirt and red baseball hat on, but the man with the red baseball hat had smacked the victim's hand away. However, other testimony from bar patrons and staff revealed that the victim and the man with the black T-shirt and red baseball hat were seen at the bar next to each other, not arguing or conversing.[6]

---

[1] Trial Transcript 9-9-2013 through 9-13-2013 ("TT"), pp. 6-10.
[2] TT pp. 8-9.
[3] TT pp. 125-27.
[4] TT p. 9; pp. 203-09.
[5] TT p. 15; p. 46; pp. 66-67.
[6] TT p. 18; p. 86; p. 236.

2

Testimony demonstrated that after Ms. Lash and Ms. Cunningham exited the bar, they walked towards Ms. Cunningham's car and the two black males who walked out of the bar ahead of them were standing in the parking lot together. As Ms. Lash approached the passenger door to the car, she testified that she saw the victim and the man with the red baseball hat standing in the parking lot together. As she entered the vehicle, Ms. Lash heard three gunshots. It was established that no other individuals were in the area. Ms. Cunningham likewise testified that she saw the men standing together and, as she approached her vehicle, she heard the first shot. She then looked out and saw sparks from the other two shots fired by the man with the black T-shirt and red baseball hat. Mark Jones, who was standing outside of Pickles bar, testified he observed the man with the red baseball hat with a gun in his hand pull the trigger. The witness also saw flashes from the second and third shots as he ducked behind a parked vehicle.[7]

After the shots were fired, the victim then grasped his chest and fell to the ground. The man with the red baseball hat remained standing there for a few seconds and then ran off through the back of the parking lot towards an alley. Ms. Lash and Ms. Cunningham then immediately ran back to the bar and informed the staff and patrons that someone had been shot and to call 911.[8]

On the evening of May 23, 2012, Amber Barrows was bartending at Pickles when she noticed the man with the black shirt and red baseball hat come in alone. Ms. Barrows had seen the man at the bar on a previous occasion and testified that she knew him by his nickname "Henny." Ms. Barrows testified that this was the second occasion in which she had seen "Henny" and that they exchanged names and had light conversation at the bar that evening. Ms. Barrows' identification of the man she knew as "Henny" gave rise to the charges against defendant. Ms.

---

[7] TT pp. 66-69; p. 82.
[8] TT pp. 47-50; pp. 61-63; pp. 68-69; pp. 71-74; pp. 81-88; pp. 177-185; pp. 190-93.

3

Barrows also identified "Henny" in the courtroom as defendant, Henry Dion Williams.[9]

Ms. Barrows testified that, later in the evening she observed Mr. Jarvis and the Defendant leave the bar. Shortly thereafter, Ms. Lash and Ms. Cunningham rushed back to the bar and shouted that someone had been shot. Ms. Barrows also provided police with sunglasses defendant left sitting on a ledge by the pool table.[10] Video surveillance of the bar revealed that defendant was wearing sunglasses as he entered Pickles bar.[11]

Washington City Police were called to the home of Richard Steele on May 24, 2012, after his 9-year-old son had found a gun located beside their trash can in their backyard. Mr. Steele lives approximately one block away from Pickles bar. On that afternoon he and his son were walking down the sidewalk when his son walked off to the right and saw a weapon lying underneath a piece of cardboard next to their trash can.[12] Lieutenant Daniel Stanek of the Washington City Police Department testified that he recovered a weapon from Mr. Steele's residence after a call was received that a firearm had been located there. The weapon was identified as a .357 Sturm Ruger revolver. After closer examination, Lt. Stanek determined that the revolver's cylinder contained three unfired, full rounds, and three spent shell casings, indicating that three rounds were discharged. The gun recovered was registered to a Mr. Donald Ament, and at that point in time, it had not been reported stolen.[13]

Donald Ament testified at trial that he had reported that his house was burglarized in March of 2007. Mr. Ament reported 4 handguns were stolen, one of which was a .357 Sturm Ruger handgun. The person who burglarized the home, Michael Todd Booher, was prosecuted. Mr.

---

[9] TT pp. 100-112.
[10] TT pp. 100-112; pp. 117-18; pp. 121-22.
[11] TT pp. 234-35.
[12] TT pp. 91-94.
[13] TT pp. 132-37; pp. 143-48.

Ament's property, including the Sturm Ruger handgun, was never returned.[14]

Corporal Andrew Pannelle, qualified as an expert in the field of latent print examination, examined the .357 Sturm Ruger, and determined that there were no identifiable latent fingerprints on the firearm.[15] Sergeant Antonio Ferraro of the Pennsylvania State Police, an expert in the field of forensic firearms and tool marking examination, also examined the revolver, and determined that it contained three discharged cartridge cases and three undischarged cartridges. Sergeant Ferraro concluded that signature markings, individual characteristics imparted onto the bullet during discharge, revealed that the patterns of the two discharged bullet jackets were discharged from the firearm recovered. He also determined that the cartridge cases, when examined in comparison to cartridges test fired, indicated that the three cartridges were discharged from the recovered Sturm Ruger revolver.[16]

Lieutenant Daniel Stanek testified that he obtained a search warrant for a black Lincoln Continental vehicle left at the scene. The video surveillance cameras from the street in front showed the vehicle arriving at the bar at approximately 10:00 p.m. and defendant entering the Pickles bar moments afterwards. The vehicle had been parked near Pickles and was there when Detective Stanek arrived at the scene. The vehicle was registered to Valerie Clark, defendant's mother. An envelope was recovered from the glove box of the Lincoln Continental, which contained court documents from varying magisterial districts, all bearing the name of defendant, Henry Dion Williams[17]

Forensic Pathologist, Dr. Leon Rozin, performed an autopsy on the victim. Trauma was observed on the chest, face, and both shoulders. There was a gunshot wound with entrance and

---

[14] TT pp. 268-72.
[15] TT pp. 152-57.
[16] TT pp. 164-67; pp. 171-73.
[17] TT. pp. 201-02; pp. 208-09; pp. 226-34; pp. 247-51.

exit wounds on the chest of the decedent, which was determined to pierce the heart and right lung. The gunshot to the face went in the right cheek and through the left cheek, exited and grazed the victim's left shoulder. The right shoulder was also shot, but was just penetrated superficially. No abrasions were found on the victim's hands. There was no indication the victim had been engaged in a fight. The cause of death was a fatal gunshot wound of the chest, damage to the heart, right lung, and severe internal bleeding. Manner of death was determined to be homicide.[18] Coroner Timothy Warco reviewed the autopsy report and also concluded that the victim's cause of death was due to a gunshot wound to the chest and the manner of death was deemed a homicide. No weapons were found on the person of the victim.[19]

Jury selection for defendant's charges began on September 9, 2013. The trial commenced on September 10, 2013, and continued through September 13, 2013. After the close of evidence and closing arguments, and following deliberations, the jury found defendant guilty on September 13, 2013, of the charges of Criminal Homicide;[20] First Degree Murder;[21] Possession of Firearm Prohibited;[22] and Firearms Not to be Carried Without a License.[23] The court held a sentencing hearing on November 26, 2013, and sentenced defendant as follows:

On the charge of Criminal Homicide, First Degree Murder, the trial court sentenced defendant to pay the costs of prosecution, to make restitution to Shirmef Corneilus, the victim's mother, in the amount of $6,685, representing the funeral expenses, and be confined in an appropriate state correctional institution for a sentence of mandatory life imprisonment without the possibility of parole for the rest of his natural life. On the charge of Possession of Firearm

---

[18] TT pp. 214-21.
[19] TT pp. 125-27.
[20] 18 Pa.C.S. § 2501(a).
[21] 18 Pa.C.S. § 2502(a).
[22] 18 Pa.C.S. § 6105(a)(1).
[23] 18 Pa.C.S. § 6106(a)(1).

Prohibited, a Felony of the second degree, defendant was sentenced to no less than three (3) years and no more than six (6) years in a state correctional facility, to run concurrently to the sentence of Murder in the First Degree. On the charge of Firearms not to be Carried without a License, a Felony of the third degree, the court imposed no further sentence, as that charge merged with the charge of Possession of Firearm Prohibited, for sentencing purposes.

Defendant filed a direct appeal to the Superior Court on December 19, 2013, docketed at No. 2014 WDA 2013, and by order of February 26, 2015, the judgment of sentence was affirmed. Defendant then filed a petition for review with the Supreme Court on March 30, 2015, docketed at No. 138 WAL 2015, which was denied by order dated November 2, 2015.

Defendant filed a *pro se* PCRA petition on July 21, 2016. Although two different attorneys were appointed to represent defendant in his collateral attack, there had been no disposition of defendant's petition. On May 26, 2021, Attorney Ryan H. James entered his appearance on Defendant's behalf., and on December 22, 2021, filed an amended PCRA petition, alleging ineffective assistance of trial counsel. The PCRA court filed a Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 on July 12, 2022, and filed an order dismissing the PCRA petition on September 29, 2022. On October 27, 2022, Defendant filed a timely appeal, appealing the September 29, 2022 order of dismissal of his PCRA petition. On December 13, 2022, defendant filed his Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

### Issues on Appeal:

Defendant has set forth two (2) issues in his Concise Statement of Errors Complained of on Appeal as follows:

1.    "Did the lower court err in dismissing Appellant's PCRA, where trial counsel rendered ineffective assistance by failing to sever Appellant's charge under 18

7

Pa.C.S. § 6105, thereby allowing the jury to hear evidence of Appellant's prior firearm conviction?

2. Did the lower court err in dismissing Appellant's PCRA, where trial counsel rendered ineffective assistance by moving for a judgment of acquittal in the presence of the jury?"

The two issues defendant raised in his Concise Statement were identical to the issues raised and addressed in his amended PCRA petition.

Both of Defendant's issues are alleging ineffective assistance of counsel. Pennsylvania employs the three-prong *Pierce* test to evaluate ineffective assistance of counsel claims. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). To be entitled to post-conviction relief, a defendant must demonstrate that:

(1) the claim underlying the ineffectiveness claim has arguable merit;

(2) counsel's actions lacked any reasonable basis; and

(3) counsel's actions resulted in prejudice to [the defendant].

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). It is well settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011).

**1. Failure to Sever Defendant's Charge Under 18 Pa.C.S. § 6105:**

Defendant's first issue on appeal is whether the PCRA court erred in dismissing his PCRA, where trial counsel rendered ineffective assistance by failing to sever his charge under 18 Pa.C.S. § 6105, thereby allowing the jury to hear evidence of defendant's prior firearm conviction. The PCRA court found that this claim was unsupported by the record and without merit.

8

Defendant claims that trial counsel was ineffective for failing to exclude from the jury the fact of defendant's prior conviction. Defendant was charged with and convicted of Possession of Firearm Prohibited, an element of which is defendant's prior conviction for a predicate offense under 18 Pa.C.S.A. § 6105. Defendant claims that trial counsel was ineffective for not seeking a separate trial for this charge under Rule of Criminal Procedure 583. Although defense counsel did not seek severance of the charges, that fact, by itself, does not presume prejudice. In *Commonwealth v. Brown*, 186 A.3d 985 (Pa.Super. 2018), which defendant relied on for his claim of "manifest prejudice," the Superior Court held that:

> However, the denial of a motion for severance is not an abuse of discretion if the facts and elements of the two crimes are easily separable in the minds of the jurors and if the crimes are such that the fact of commission of each crime would be admissible as evidence in a separate trial for the other.
> We believe this test to be inapplicable to out situation. Here, we are presented with a crime which, as part of the proof, requires proof that the appellant had previously committed a violent crime.

*Id.* at 994. The *Brown* panel took particular exception to the fact that the jury heard evidence of the defendant's prior conviction of a *violent crime*, which prejudiced the jury with respect to his conviction for Theft, Receiving Stolen Property, and Firearm not to be Carried Without a License. In the instant case, defendant's main charge was Criminal Homicide, for which the Commonwealth was alleging Murder in the First Degree. The introduction of the prior predicate conviction for Possession of weapon on school property, 18 Pa.C.S.A. § 912,[24] is not a crime of violence and could hardly be said to cause the jury to "leap" to the conclusion that defendant committed First Degree Murder, as defendant claimed. Nor could it be said to cast defendant as a "gun-totting felon."[25] The jury was not informed whether this predicate offense involved a firearm, was not appraised of the grading of the offense, nor any of the underlying facts of the offense. In fact, the

---

[24] See 18 Pa.C.S.A. § 6105(b).
[25] Amended PCRA petition, p. 13.

predicate offense of Possession of weapon on school property is not a felony, but a misdemeanor.[26] Except for this charge, the jury was unaware of the Defendant's prior record. In addition, immediately after the predicate conviction was entered into evidence, the trial court instructed the jury that the conviction was to be considered only for a limited purpose:

> Ladies and gentleman, two things: you just heard evidence that Mr. Williams, the Defendant, had been convicted of this crime, Possession of a Weapon on School Property in Fayette County in 2006. This testimony is being offered for a limited purpose. The only purpose which you may consider this evidence of a prior criminal conviction is in determining whether or not the Defendant was a person prohibited by law from possessing, using, controlling, selling, transferring, or manufacturing a firearm on the date in question. That is one of the offenses that he is charged with and one that you will consider for the offense of Possession of Firearm Prohibited. You may not consider this evidence of his prior conviction in deciding whether or not the Defendant committed any other offense that he's charged with in this case...I'll go over that again at the conclusion of the trial, but just remember that that prior conviction is only to be considered for that crime of Possession of Firearm Prohibited and not the other two charges for which the Defendant is charged.[27]

The trial court repeated this cautionary instruction at the close of the Commonwealth's case,[28] and again as part of its final instruction to the jury.[29]

Moreover, this was not a circumstantial case, as Defendant would suggest. Defendant was captured on video speaking with the victim at the bar, leaving the bar with the victim, and moments later, two eyewitnesses saw defendant shoot the victim at point blank range. While there was significant circumstantial evidence to support the eyewitness testimony, including defendant's vehicle being left at the scene, there was overwhelming direct evidence from which the jury could find defendant guilty. Defendant failed to prove that his ineffectiveness claim had arguable merit or that he was prejudiced by his counsel's failure to seek severance of the charges.

---

[26] 18 Pa.C.S.A. § 912(b).
[27] TT pp. 278-79.
[28] TT p. 320.
[29] TT p. 366.

10

## 2. Moving for Judgment of Acquittal in the Presence of the Jury:

The second issue raised by defendant in his appeal is that his trial counsel was ineffective for moving for judgment of acquittal in the presence of the jury. The PCRA court found that this claim was unsupported by the record and without merit. Trial counsel certified that it was his practice to make such a motion at sidebar, although he could not recall specifically whether that was done in this case. From the trial transcript, it appears that the defense motion for judgment of acquittal was made in the presence of the jury, and that the trial court denied the motion on the record immediately thereafter. However, despite PCRA counsel's characterization of this exchange, it could not be construed as a signal to the jury that the court "was satisfied there was sufficient evidence to convict" defendant of murder.

| | |
|---|---|
| Defense Counsel: | At this time at the close of the Commonwealth's case I would make a motion for judgment of acquittal. |
| Trial Court: | . . . As to the motion for judgment of acquittal the motion is denied.[30] |

There was no other argument or discussion on the motion or reference to any evidence presented. If a member of the jury was sophisticated enough to understand the meaning of a "motion for judgment of acquittal," then she or he would understand that the court's consideration of the motion was a question of law, and that denial of the motion meant only that there was sufficient evidence for the jury to consider a verdict, and not a determination that there was sufficient evidence to convict defendant of murder. See *Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa.Super. 2004). "A challenge to the sufficiency of the evidence is entirely distinct from a challenge to the weight of the evidence." *Id.*

---

[30] TT pp. 319, 320.

11

Moreover, the court instructed the jury at the beginning of the trial and after closing arguments that the jurors were the sole judges of the facts:[31]

> Trial Court: I am not, as I have indicated many times, the judge of the facts. It's not for me to decide what the true facts are concerning the charges against the Defendant. You, the jurors, are the sole judges of the facts. It will be your responsibility to consider the evidence, to find the facts and apply those facts to the law as I have instructed you on the law and applying the law to the facts as you find them to make your decision as to whether the Defendant has been proven guilty beyond a reasonable doubt.[32]

Nevertheless, PCRA counsel cites Second Circuit District Court authority and Connecticut appellate authority, (*State v. Edge*, 47 Conn.App. 743 (Conn.App.Ct. 1998)), for his bold conclusion that the "impact of the Court's denial of the motion for judgment of acquittal is immeasurable" and that defendant was manifestly prejudiced.

At the outset, the court notes that defendant bears the burden of proof, by a preponderance of the evidence, that his claim of counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Defendant has failed to sustain his burden that he has been prejudiced by the presentation of the motion for judgement of acquittal in the presence of the jury. Moreover, the non-precedential, non-jurisdictional authority relied upon by defendant does not support his conclusion of manifest prejudice. The authority cited by defendant expressly holds that a finding of prejudice involves review of the entire record, stating "that while ruling on such motions outside the presence of the jury is the preferred practice, it is neither a mandatory rule nor a constitutional

---

[31] TT p. 352; pp. 354-355; p. 357; p. 369.
[32] TT p. 369.

requirement." *State v. Edge*, 47 Conn.App. 743, 748 (Conn.App.Ct. 1998). "Determining whether such a ruling in the presence of the jury constitutes prejudicial error requires a careful examination of the record as a whole, including any cautionary instruction given to the jury by the court, and must be determined on a case-by-case basis." *Id.*

As noted above, the trial court issued cautionary instructions to jury at the beginning of the trial and after closing arguments that the jurors were the sole judges of the facts:[33] Furthermore, defendant's bald allegation that the impact of the jury hearing the motion for judgment of acquittal was "immeasurable" and that he "was prejudiced by this misstep" is insufficient to sustain his burden of proof and warrant relief. As stated previously, while there was significant circumstantial evidence to support the jury's guilty verdict, this was not a circumstantial case. Defendant was captured on video leaving the bar with the victim, and, moments later, two eyewitnesses saw defendant shoot the victim at point blank range. There was overwhelming direct evidence, supported by circumstantial evidence, from which the jury could find defendant guilty.

### Conclusion:

WHEREFORE, based on the foregoing, the court respectfully submits that defendant's amended PCRA petition is lacking of any arguable merit and the dismissal of said petition should be affirmed.

By the Court,

Dated: 1/31/2023

John F. DiSalle, J.

---

[33] TT p. 352; pp. 354-355; p. 357; p. 369.

13